## SUPREME COURT.

### CAROLINE MURRAY agt. MARY HARRISON and others.

Where on 26th May, 1846, a *bond*, accompanying a mortgage, was executed in the penalty of $8,000, conditioned to pay "in *gold and silver coin*, of the standard by which the coins of the United States were regulated by the laws existing on the 26th day of May, 1846," the sum of $4,000, in three years from the date thereof, with interest at the rate of seven per cent per annum, payable semi-annually :

*Held*, that a payment made on the 11th of December, 1865, of $4,151.66, the amount then due on the bond and mortgage, in *legal tender notes*, satisfied the bond and mortgage. It appearing that the difference in value at the time of payment, between the gold and silver coin and legal tender notes, was $2,000.

*New York Special Term, February*, 1867.

DEMURRERS to complaint.

William Harrison executed his bond, dated May 26, 1846, to Frederick Bronson, executor, &c., of Isaac Bronson, deceased, in the penalty of $8,000, conditioned to pay "in gold and silver coin, of the standard by which the coins of the United States were regulated by the laws existing on the 26th day of May, 1846," the sum of $4,000, in three years from the date thereof, with interest at the rate of seven per cent per annum, payable semi-annually, and mortgaged certain property as collateral security. The plaintiff is assignee of this bond and mortgage.

The premises mortgaged being decreed to be sold in partition, and the referee being directed by the judgment to pay off this mortgage, accordingly paid the plaintiff, on the 11th of December, 1865, $4,151.66, the amount then due on the bond and mortgage, in legal tender notes. This payment was, by special order, entered in the action, and with consent of the plaintiff, made "without prejudice to, and

saving her right to be paid in gold and silver, according to the terms of said bond and mortgage," and a balance of $2,000, being the difference in value between the value of said notes and the gold and silver coin agreed to be paid, and said sum of $2,000, was, by stipulation, deposited in the U. S. Trust Company, as a substitute for the mortgaged premises.

Judgment is demanded, adjudging that said principal and interest, to wit, $4,151.66, was payable in gold and silver coin, and that the money in court be paid to plaintiff.

To this complaint the defendants have demurred, that the complaint does not state facts sufficient to constitute a cause of action.

H. W. ROBINSON, *for defendants.*

I. The payment to the plaintiff of the amount due her on the 11th December, 1865, on the bond and mortgage in question, to wit, the sum of $4,151.66, in legal tender notes, was a full aquitance and discharge of the debt.

The act of the United States congress, of February 20, 1862, and March 3, 1863 (12 *U. S. Statutes at Large*, 341, 711), enact that these notes shall " be lawful money, and a legal tender in payment of all debts, public or private, within the United States, except for duties on imports, and interest on the public debt."

The validity and constitutionality of this act has been maintained in this state. (*The Metropolitan Bank* agt. *Van Dyck*, 27 *N. Y.*; *Myers* agt. *Rosevelt*, Id. 400; *Wilson* agt. *Morgan*, 30 *How. Pr. R.* 386; *Hagan* agt. *Powers*, 39 *Barb.* 427; *Rosevelt* agt. *Bull's Head Bank*, 45 *Barb.* 579; *Kempton* agt. *Bronson*, Id. 618; *Thayer* agt. *Hedges and others*, 23 *Ind.* 141; *in Indiana*, *Reynolds* agt. *Bank of Indiana*, Am. Law *Reg. N. S.* 669; *Michigan*, *Van Husen* agt. *Kanouse*, 13 *Mich.* ; *Mass. Wood* agt. *Bullens*, 6 *Allen*, 516; *Iowa*, *Warnibold* agt. *Schlicting* 16 *Iowa*, 243; *Troutman* agt. *Gowing*, Id. 115; *Hentrager* agt. *Bates*, Id. 17, 172; *Missouri*, *Henderson* agt. *McPike*, March 31, 1862; *New Hampshire*, *George* agt. *City*

*of Concord, March,* 1865 ; *Wisconsin, Brestenbach* agt. *Fume,* 14 *Wis.* 140 ; *California, Reese* agt. *Stearns, January,* 1866.)

The prerogative of regulating the currency rests in the United States, and not in the states.

The power of the sovereign to alter the intrinsic value of money, and create a legal tender or means of discharging debts or obligations, by payment in a circulating medium or currency.   See Lord BACON's *Law Maxims, vol.* 3, *p.* 231 ; " *Æstimatio proeteriti delicti ex post facto nunquam crescit.* And yet in all civil reckonings the alterations shall take place ; as if I contract with a laborer to do some work for twelve pence, and the enhancing of money cometh before I pay him, I shall satisfy my contract with the sixpenny piece so raised." (30 *Law Journal, N. S.* 690 ; *Emp. of Austria* agt. *Day,* 1 *J. Davies' R. ; Gilbert* agt. *Brett, and cases cited,* 27 *N. Y.* 455.)

The contract to pay so many dollars in the lawful coin of the country (the coin was then alone composed of gold and silver), is subsequently satisfied by payment of anything which the law makes a lawful tender.

The time of payment, not the time of the contract, is to be regarded.   (*Schoenberger* agt. *Watts,* 1 *Am. Law Reg. N. S.* 553 ; *Connor* agt. *Steamtug Griffin,* 5 *Id.* 45 ; *Swanson* agt. *Coole, Judge* INGRAHAM, *March,* 1866 ; *N. Y. Transcript, April* 6, 1866.)

The obligation of the defendants was fully discharged, and judgment should be given in their favor.

MORRIS S. MILLER, *for plaintiff.*

I. The complaint and the conditions of the bond and mortgage, show the intent and purpose of the parties to the strument to have been, that the conditions thereof could not be satisfied, except by the payment of four thousand dollars in gold and silver coin, of the standard by which coins of the United States were regulated on the 26th day of May, 1846, as therein expressed.

II. An express contract for the payment of gold or silver

dollars in specie, is legal, and will be enforced. (*Gladstone agt. Chamberlain, U. S. Circuit Court, before Judge* NELSON, *on demurrer, before Judge* SMALLEY *and a jury, October* 25, 1866 ; *Prouty* agt. *Potter, Supreme Court, N. Y.; Luling* agt. *Atlantic Mu. Ins. Co.* 30 *How. Pr.* 69 ; *Farr* agt. *Murstellan,* 2 *Cranch,* 10 ; *Miller* agt. *Hurd, Kentucky Ct. of Ap.; Coucer* agt. *The Steamtug Griffin, Am. Law Reg. November* 5, 1865, *N. S. vol.* 5, *No.* 1, *affirmed by* NELSON, *J. August,* 1865 ; *Case of the Ship Rochambeau,* 26 *Bost. Law Rep. p.* 564 ; *cited Am. Law Reg. November,* 1865, *N. S. vol.* 5, *No.* 1 ; *O. S. vol.* 14 ; *Carpenter* agt. *Atherton,* 28 *How. Pr. R.* 303.)

III. The precise question before the court is, whether the plaintiff was bound to receive legal tender notes, and to satisfy the mortgage before coin was tendered? and not whether she can recover damages for a breach of the covenants of the bond ; and she is in the same legal position as before she received the legal tender notes. The plaintiff did not seek to enforce the payment of the bond, but insisted on the payment of gold and silver dollars of the standard of May 26, 1846, if the defendant insisted on paying the bond and mortgage.

The complaint shows that the plaintiff thereupon, without prejudice, and saving all her rights to be paid in coin, accepted $4,151.66, in legal tender notes, released the mortgaged property, and the sum of $2,000 was substituted in lieu thereof, as the stipulated amount of the damage or difference between coin and currency, and was deposited, to be paid over to the plaintiff if this court should adjudge that she is right in claiming that the bond could not be satisfied except its conditions for the payment in coin, as expressed therein, be fulfilled.

1. Therefore, the plaintiff has waived none of her rights to the difference, by accepting the legal tender notes.

2. The damages or difference in value having been fixed by the parties at $2,000, arguments or cases cited by counsel on behalf of the defendants, showing that although the plaintiff might have refused to satisfy the bond and mortgage, if coin had not been tendered, yet that had she com-

menced an action at law in case of non-payment, she could recover no damages by reason of a technical breach of the condition, upon the theory that the law adjudges legal tender notes equal in value to gold and silver coins of equal denominations, are not in point.

IV. The cases of *Rodes* agt. *Bronson* (*Court of Appeals*, 34 *N. Y. R. p.* 649), and *Kempton* agt. *Bronson* (45 *Barb. Sup. C. R. p.* 610), are distinguished from this case, because in those cases the words "gold and silver" dollars, are followed by and qualified with the words "lawful money of the United States," in lieu of the words "of the same standard as regulated by law May 26, 1846."

V. The government requires duties on imports to be paid in gold and silver coin, and there is no statute principle of law or of public policy (*vide act of February* 25, 1862), which makes the contract for the purchase or payment of coin illegal; nor is there any distinction in principle between a contract for specie or coin to be delivered immediately, and a contract in the form of a bond and mortgage.

VI. The obligor of a bond, in consideration of the delivery to him of a certain number of pieces of gold and silver coin of certain standard at the date of the contract, promised to re-deliver a certain number of pieces of gold and silver, of a specified size, weight, form and quality, and the words describing them as dollars, are descriptive merely.

The fact that a piece of gold or silver is placed in a die and stamped by the government, which requires it in payment of duties on imports, ought not to reduce its value.

VII. A contract to deliver goods or chattels, is a "debt;" but not within the statute, to be satisfied by a tender of legal tender notes; and in this case the contract to pay is a contract to deliver. (*See Webster's Dictionary : Debt; n. v. Pay ;* "DEBT, *n. L. debtitum, contracted.* 1. *That which is due from one person to another, whether money, goods or services.* PAY, *v. F. payer.* 1. *To discharge a debt ; to deliver to a creditor the value of the debt either in money or goods, to his acceptance or satisfaction."*)

VIII. The decision in *Wilson* agt. *Morgan* (30 *How. Pr.*

*R.* 386), is not, it is submitted, based upon principles of law or justice, and cannot be sustained.

IX. While gold and silver coin is regarded as money, and the standard of value by all nations, commercial convenience, credit and good faith, as well as public policy, particularly in a commercial city like New York, require that contracts of this character should be deemed valid and binding, and enforced by the courts.

SUTHERLAND, J. I shall treat the demurrers to the complaint, which are general, as presenting, and intending to present for decision, the single question, whether the plaintiff must deem herself and her bond and mortgage satisfied by the $4,151.66, which she has received in legal tender notes, or whether she is entitled to receive in addition thereto the $2,000 in legal tender notes deposited in the United States Trust Company, under the order of the court in the partition suit, by arrangement between the parties, as and for the difference between $4,151.66 (the amount due on the bond and mortgage for principal and interest), and the market value of a certain quantity or number of pieces of gold or silver coin, of the standard mentioned in the condition of the bond, amounting by tale, or denominationally, to the same sum.

In my opinion, it inevitably follows from the decision of the court of appeals in *Meyer* agt. *Roosevelt* (27 *N. Y. R. p.* 400), holding the legal tender act to be constitutional and valid, not only as to contracts made after the passage of the act, but also as to contracts made before, that this court must consider the plaintiff's bond and mortgage fully paid and satisfied by the $4,151.66, which she has received in legal tender notes, and that there must be judgment for the defendants on the demurrers.

The condition of the bond (dated May 26, 1846), is to pay $4,000 in three years from the date, " in gold or silver coin, *of the standard by which the coins of the United States were regulated, by the laws existing on the 26th day of May,* 1846, with interest at the rate of seven per cent per annum, pay-

able on the 26th day of November, in each and every year, in coin as aforesaid."

Gold and silver are used not only for coinage, but extensively for various other useful purposes; hence, gold and silver bullion, as a commodity, or as merchandize, has an intrinsic value, not only for coinage, but for such other purposes; and hence gold or silver coin has an intrinsic value as a commodity, or as merchandize, and may be treated as such by parties in making contracts; and in construing and enforcing contracts, I do not see why the courts should not treat gold or silver coin as the parties have treated it by their contract.

The coinage or stamping of portions or pieces of these metals, alloyed with baser metals, by government prerogative, fixes the value of such pieces as money, or coined money, but the regulated standard of gold or silver coin of a given weight, that is, the proportion by weight of its fine metal and alloy, determines its relative value as a commodity.

Before the legal tender act, money meant coined money, in all legal proceedings to enforce the payment or collection of *money* debts.

It *was* the office of money, or coined money, not only to measure the money value of all commodities, even its own value, viewed or treated as a commodity, but also to pay or satisfy money debts. Indeed, if one may be excused for uttering such a mere verbal truism, value in the abstract, or as measured by money, could not be expressed without money. Hence it is evident that before the legal tender act, it followed from the office or capacity of coined money, the coinage system of the United States, its adopted unit of value, and the power of congress to coin money, and to regulate the value of coins, that a promise to pay one hundred dollars, was in legal effect a promise to pay at the option of the promissor, one hundred dollars in any coin which might be a legal tender for one hundred dollars at the time of payment; and hence, that a note for one hundred dollars, and a note for one hundred dollars payable in one hundred silver

dollars, or in one hundred gold dollars, or in five double eagles, or ten eagles, or twenty half eagles, with or without the additional words " lawful or current money of the United States," was the same in legal effect; for in either case, the note could have been paid in silver dollars, or in either of the gold coins.

My excuse for these extremely elementary remarks, must be the peculiar character of the contract in this case.

The contract is to pay $4,000 (the principal mentioned in the condition of the bond) and the interest, in gold or silver coin, of the standard by which the coins of the United States were regulated by the laws on the 26th day of May, 1846, the date of the bond.

As the standard of a gold and silver coin of a given weight, determines its relative value as bullion or a commodity, the contract may be said to be to pay $4,000 and interest, in gold or silver coin, of the value of like coin of a certain standard specified in the contract.

It is plain then, that by the contract the parties to it treated the gold or silver coin to be paid or tendered as a commodity, or as specific articles of a commodity, for the coin is to be valued ; of course valued in money ; in dollars and cents.

By the contract, the coin tendered in payment is to be valued, and if not of the value or standard called for by the contract, then the difference in values is also to be paid or tendered.

The values, and the difference between them, must, of course be expressed in money, in dollars and cents.

Now, the thing, the coin, which by the contract is to be valued in money, cannot, by the contract, be treated as money. Money, and the thing which it is to measure and express the value of, cannot both be viewed or treated as money, even though that thing be gold or silver coin.

It is evident then, that the parties to the contract, by it treated the coin in which the bond is payable, as a commodity, which by the contract was to be of a certain value,

or of a value, the means of ascertaining which are fixed by the contract.

The court must treat the coin in which the bond is payable, as the parties to the contract by the contract have treated it; and what is the result? Of course, the result is, that the court must view the contract as a contract to pay a certain sum of money, a money debt, in a certain commodity, or in specific articles of a certain commodity, at a certain price or valuation fixed or provided for by the contract. And what is the legal result?

It must be deemed settled, that a contract for the payment of a certain sum of money, a note for instance, in specific articles, at a certain price or valuation, gives to the paying party the option or privilege of paying the money, in such specific articles, at the price or valuation; but does not give to the party entitled to receive payment, the right to enforce payment in such articles, at the price named, or any other price or valuation; that the paying party *may* pay in the specific articles or commodity, at the price or valuation, but that the receiving party *must* receive his debt in money, if legally tendered. (*Pinney* agt. *Gleason*, 5 *Wend.* 394; *Smith* agt. *Smith*, 2 *Johns.* 235; *Brooks* agt. *Hubbard*, 3 *Conn.* 58, 60; *Fletcher* agt. *Derickson*, 3 *Bosw.* 181.)

Of course, it follows if the legal tender act had not been passed, but congress after the date of the bond, had materially debased or lowered the standard of gold and silver coin, that the plaintiff would have been obliged to receive payment of her debt in such debased gold or silver coin, by tale or count; that her debt could have been paid in any gold or silver coin, at its *then* regulated standard or value as coin or money, which was, or might be, a legal tender for such a sum or amount of money. It is plain that this result would have followed, from the very terms of the contract, and without reference to the considerations that it was the evident intention of Bronson, to whom the bond was executed as executor, by the contract to protect the estate under his charge, against the power of congress to regulate the value of coins; of course to debase them; and that no

court could aid a party in thus undertaking by contract to thwart or evade a conceded power of congress.

The very terms of the contract compels the court to hold, that the plaintiff's claim is not for the coin to be valued, or for its value, but that her claim is for her money debt. expressed in dollars, and the interest on it, by the contract to be paid in gold or silver coin, &c.

I am not aware that the standard or weight of gold or silver coins (except the weight of half dollars and smaller silver coins, by the act of 1853, and which, by the act, are made a legal tender for sums not exceeding five dollars) has been lowered, or lessened, or altered, since the date of the bond. I cannot see, therefore, how there could have been occasion for saying what has been said, as to its construction, legal effect, &c., if the legal tender act had never been passed ; but the legal tender act was passed, and has been held constitutional by a court which controls, and has a right to control, the decisions of this court.

The act does not declare legal tender notes to be coins. The most sanguine alchemist that ever lived probably never dreamed of converting paper into either gold or silver.

A ten dollar legal tender note does not purport on its face to be ten dollars, but does purport on its face to be a promise to pay ten dollars. On its face it purports to be a *promise* to pay money, not to be money. But the act does declare that these notes " shall be lawful money, and a legal tender in payment of *all debts*, public and private, within the United States, except duties on imports and interest on government bonds, which shall be paid in coin."

Now, anything which is a legal tender for a money debt, which a party is by law *obliged* to receive in payment of his money debt, must be money, or considered to be money, for it performs an office, or has a capacity, which nothing but money can perform or have.

It necessarily follows, then, from the terms and legal effect of the terms of the plaintiff's bond or contract, and from the legal tender act, and the controling decisions affirming its constitutionality, that I must hold, as the complaint shows

that the plaintiff had received $4,151.66, the amount due on the bond for principal and interest, in legal tender notes, that the bond has been paid, and that she must consider herself and her bond both satisfied by such payment, for such is the controling law of the case.

Of course, any one must see that when gold or silver coin is the subject of a contract of purchase and sale and delivery, or of pledge, or of special deposit, or of an unlawful conversion, it is perfectly consistent with the foregoing views and conclusions arrived at, for the court to treat it as a commodity, and apply the same rule of damages for its non-delivery or unlawful conversion as would be applied for the non-delivery or unlawful conversion of any other article or commodity.

And to prevent misapprehension of what has been said, and in view of several of cases growing out of the legal tender act, cited on the argument, and which I have not time more particularly to refer to, I will go further and say, if A. B., in the present condition of things, agrees to sell and deliver one hundred bushels of wheat to C. D., or to perform certain services for C. D., for one hundred dollars in gold or silver coin, that I do not see why this court cannot and ought not to treat the agreement as an agreement, in the one case, to exchange one commodity for another commodity, and, in the other case, as an agreement to exchange or render certain services for a certain commodity.

An agreement to pay so many dollars in coin, or in coin at a certain valuation, by tale or weight, is one thing; but an agreement to pay so many dollars, or to render certain services, or deliver a certain commodity, for coin, by tale or weight, is another thing.

The result of the legal tender act is, that gold and silver coin have practically ceased to be currency, and have become, except as to the government, practically exclusively a commodity, and are bought and sold, and speculated in, and commonly viewed and treated as such.

Why should a court ignore this state of things, unless

compelled to do so by the terms of the contract, or by force of the legal tender act?

Why should not A. B. and C. D. be presumed to have made the supposed agreement, in view of the fact that gold and silver coin has, as between individuals, become exclusively a commodity—in view of the fact that a gold eagle is worth fourteen or fifteen dollars in legal tender notes? Why should not the court consider A. B. and C. D. as having, by their supposed agreement, treated the coin to be paid for the commodity or services as a commodity, and the words *one hundred dollars*, as used by them for the purpose of designating the quantity or number of pieces of coin, at their stamped or coined value as money, to be delivered or paid? And if A. B. and C. D. have so treated it by their supposed agreement, why should not the court so treat it, and consider C. D.'s agreement as substantially an agreement to deliver a certain quantity or number of pieces of coin, as a commodity for a certain other commodity, or for certain services.

In examining the plaintiff's case of a *money debt*, and her rights under her *money bond* in view of the legal tender act, I have not intended to say anything not consistent with the conclusion that if, in the supposed case, A. B. delivered the wheat or performed the services according to agreement on his part, and C. D. did not pay or deliver the coin according to agreement on his part, he would be legally liable to pay the value of the coin in dollars, that is practically in legal tender notes, for practically legal tender notes are *money*, and represent *dollars*.

The agreement on C. D.'s part, in the supposed case, is not to pay so many dollars, nor to pay so many dollars in coin, or in coin at a certain valuation, but is an agreement to pay so many dollars in coin *for the wheat or for the services*.

'No debt or duty is due from him until A. B. delivers the wheat or performs the services, and when A. B. does this, the terms of the supposed agreement would not compel the court to hold that a *money debt* of one hundred dollars was

due from C. D., and I do not see why the court should not hold, considering the circumstances under which the supposed agreement was made, and with reference to which the parties must be presumed to have contracted, that C. D.'s duty was, on performance by A. B., either to deliver the coin or to pay its value in legal tender notes.

There must be judgment for the defendants on the demurrers, with costs.