By the Court, Robertson, Ch. J.
The plaintiffs were entitled to their commissions as soon as the charter-party was executed, and were not hound to wait until it was performed. The per centage to be allowed them is to be estimated not by the ultimate actual profits of the adventure, but by what they might be, if it should prove successful. And it remains, therefore, to be determined, what that might have been, if the contemplated voyage were performed with a full cargo. The capacity of the vessel was admitted in the pleadings to have been 4200 barrels, and the rate of payment seems to have been conceded to have been that provided in the charter-party, for payment at Mauritius. It would be immaterial which-place was taken as the ultimate' destination, unless there was a difference between the value of four shillings and two pence at Mauritius, and two guilders and a half at Batavia.
The evidence showed the rate of exchange in currency, between Mauritius and Hew York, making the value of a pound sterling at the former place equivalent to about ten dollars and a half in currency here. In other words, it would require that sum paid here, to obtain a pound sterling at the former place, or that sum could be obtained here for a pound sterling there, and the defendants would be entitled to that sum in currency for every pound sterling due at Mauritius. (Graves v. Dash, 12 John. 19. Denston v. Henderson, 13 id. 322. De Rham v. Grove, 18 Abb. 43. Story’s Confl. of Laws, §§ 309, 311. Cash v. Kennion, 11 Ves. 314. Grant v. Healey, 3 Sumn. 523. Smith v. Shaw, 2 Wash. C. C. R. 167, 168. Guiteman v. Davis, 45 Barb. 576, n.) Foreign coins ceased to be part of the currency of the United States in 1857, (11 U. S. Stat. at Larye, 163,) by an act which repealed all others, which either authorized their use as currency, or declared them to be a legal tender in payment of debts. They therefore were articles of merchandize only, stripped of every characteristic of being part of the currency of the country. The Revised Statutes of this state had provided (yol. 1, p. 771, § 20) that the amount due on a dishonored *118 bill of exchange, whose contents were “ expressed in the money of account or currency of a foreign country ” should “ be ascertained and determined by the rate of exchange, or the value of such foreign currency.”
A contract to be completed in á foreign country, the compensation for which is payable in the money of account or currency or coin of that country, is to be considered as performable there, at least so far as the place at which the value of such currency, money or coin is to be estimated is concerned, particularly as the charterers would have a lien for the freight at the place of delivery of the cargo.
I regard the designation of a dollar in gold as the price of each barrel transported by the vessel in question as being purely nominal. No such gold coin existed, except in-the United States, that I am aware of, and the parties could hardly have meant that it was intended to pay in them in a foreign port. The value of the coin or denomination of money intended is fixed by the charter-party as being equivalent to four shillings and two pence at Mauritius and two guilders and a half at Batavia. If there was any difference in the value of those two amounts, it is clear that the term “ dollar ” was not intended to express a uniform value. It is true that there are two currencies in the United States, one in gold and the other in paper; and that the former is, or was, worth nearly half as much again as the latter; but the plaintiffs could only obtain, and the defendants would be authorized to discharge their obligation by such paper or inferior currency, and therefore it is that, that in the value of such foreign coin is to be estimated. There is no reason for treating it differently from any other article of merchandise in which the charterers of the vessel had agreed to pay the charter money. ' An agreement to pay four shillings and two pence of English currency at Mauritius, or two guilders and a half at Batavia, would entitle the payees to recover their value in paper currency at New Y ork. Without reference, therefore, to what would have been the construction of the charter-party, if it had been *119 simply for the payment of so many dollars in gold, when the principles laid down in Wilson v. Morgan, (1 Abb. N. S. 174,) Rodes v. Bronson, (34 N. Y. Rep. 649,) and Murray v. Harrison, (47 Barb. 484 ; 45 id. 579, 618,) would have been applicable. I think the plaintiffs are entitled to five percent on the value in Hew York of the amount of sterling currency susceptible of being earned at Mauritius under such instrument.
Judgment must therefore be given for the amount of the verdict, with interest.
Barbour, J., concurred.